Present: Hassell, C.J., Lacy, Keenan, Koontz, Kinser, and
Lemons, JJ., and Compton,* S.J.

NICHOLAS ASTOR PAPPAS

v.  Record No. 052136     OPINION BY JUSTICE DONALD W. LEMONS
                                April 21, 2006
VIRGINIA STATE BAR

         FROM THE VIRGINIA STATE BAR DISCIPLINARY BOARD

    In this appeal of right, Nicholas Astor Pappas ("Pappas")

challenges the rulings of the Virginia State Bar Disciplinary

Board ("Board") in a proceeding in which the Board suspended

Pappas' license to practice law for a period of six months.

                          I.  Background

    On August 15, 1999, Rochelle McCarl ("McCarl") was

injured in an automobile accident.  Soon thereafter, McCarl

employed Pappas to represent her concerning a personal injury

claim arising from this accident.  On February 28, 2000,

McCarl was injured in another automobile accident, this time

while riding in a car driven by her boyfriend, Kenneth Randall

Poe ("Poe").  Poe was charged with violating Code §§ 18.2-266

(driving while intoxicated), 46.2-324 (failure to notify the

Department of Motor Vehicles of a change in address), 46.2-852

(reckless driving), 46.2-1043 (operating a motor vehicle with

defective equipment), and 46.2-1094 (failure to wear a seat

---

    * Senior Justice Compton participated in the hearing and
decision of this case before his death on April 9, 2006.

1

belt). Poe was directed to appear in the General District Court of the City of Fredericksburg on March 14, 2000.

For reasons that are unclear in the record, Poe's hearing did not occur on March 14. On or about May 4, 2000, based on a referral by McCarl, Poe approached Pappas and asked Pappas to represent him. Pappas agreed. At about the same time, McCarl and Poe, who were living together, moved from Virginia to New Jersey. Later that year, McCarl and Poe moved from New Jersey to Tennessee.

On June 22, 2000, the hearing on Poe's February 28 violations was held and Pappas appeared on behalf of Poe before the General District Court of the City of Fredericksburg. Pappas entered a plea of guilty on Poe's behalf and the district court found Poe guilty of driving while intoxicated under Code § 18.2-266. All of the other charges were either dismissed or nolle prossed. Pappas informed Poe of the district court's action in a letter dated June 26, 2000.

On July 7, 2000, Pappas wrote the Virginia State Police to request information regarding the February 28 accident. Pappas stated in the letter that he represented McCarl. On September 26, 2000, McCarl signed an agreement with Pappas for Pappas to represent McCarl in her claim for personal injuries against Poe. On September 27, 2000, Pappas had Poe execute a

2

document entitled, "Waiver," stating that Poe was waiving any possible conflicts that might arise from the representation of McCarl by Pappas in a suit against Poe regarding injuries McCarl sustained in the February 28 accident.

Subsequently, Pappas filed a motion for judgment on behalf of McCarl against Poe in the Circuit Court for the City of Fredericksburg on February 27, 2002. Poe was represented by John W. Hartel ("Hartel"), and on October 11, 2002, Hartel requested that Pappas be removed as McCarl's counsel. On March 4, 2003, the Circuit Court for the City of Fredericksburg found that Pappas' conduct violated Rule 1.7 of the Virginia Rules of Professional Conduct, "Conflict of Interest: General Rule," and removed Pappas as counsel for McCarl. On March 5, 2003, Hartel filed a complaint with the Virginia State Bar ("Bar") against Pappas.

On November 30, 2004, the Sixth District Committee certified its determination to the Board that Pappas' conduct violated Rule 4.3(b)[1] and Rule 8.4(c)[2] of the Rules of Professional Conduct. As part of the facts cited in support

---

[1] "A lawyer shall not give advice to a person who is not represented by a lawyer, other than the advice to secure counsel, if the interests of such person are or have a reasonable possibility of being in conflict with the interest of the client."
[2] "It is professional misconduct for a lawyer to: . . . engage in conduct involving dishonesty, fraud, deceit or

of its determination, Paragraph 5 of the certification stated, "Mr. Poe ha[s] moved to Tennessee and did not appear for the DUI hearing, but Mr. Pappas appeared and, with Mr. Poe's consent, entered a guilty plea on his client's behalf." In his answer, Pappas admitted that Paragraph 5 was correct.

Pappas' hearing before the Board commenced on April 22, 2005. In the course of the hearing that day, counsel for the Bar moved for a continuance in order to obtain the retainer agreement between McCarl and Pappas in McCarl's suit against Poe because the date it was signed was a material fact. Pappas objected, but the continuance was granted.

Prior to the commencement of the hearing, the Bar had been unable to locate Poe; however, subsequent to the granting of the continuance, the Bar located Poe and deposed him. The Board re-convened on July 22, 2005. In addition to the retainer agreement, Counsel for the Bar sought to introduce the deposition testimony of Poe and amend the certification from the Sixth District Committee. In his deposition, Poe stated that he did not authorize Pappas to enter a guilty plea on his behalf. Because of this testimony, the Bar sought to amend Paragraph 5 of the certification so that it would read, "Mr. Poe had moved to Tennessee and did not appear for the DUI

misrepresentation which reflects adversely on the lawyer's fitness to practice law."

4

hearing, but Mr. Pappas appeared and, allegedly with Mr. Poe's consent, entered a guilty plea on his client's behalf." Pappas objected to both the deposition testimony and the amendment of the certification, but his objections were overruled. The Bar was granted leave to amend the certification and Poe's deposition testimony was received in evidence. The hearing concluded on July 22. The Bar withdrew the certification of a violation of Rule 4.3(b) and asked the Board to find Pappas in violation of Rule 8.4(c).

On August 10, 2005, the Board issued its order finding by clear and convincing evidence that Pappas violated Rule 8.4(c). The Board suspended Pappas' license to practice law in the Commonwealth for six months. The Board also ordered Pappas to comply with the requirements of Part Six, § VI, ¶ 13(M) of the Rules of the Supreme Court and assessed costs against Pappas.

In this appeal of right, Pappas assigns four errors to the decision of the Board: (1) error "in permitting the bar to amend ¶ 5 of the Certification at the disciplinary hearing on July 22, 2005"; (2) error "in admitting the deposition testimony of [Kenneth Randall] Poe with reference to ¶ 5 of the Certification at the disciplinary hearing on July 22, 2005"; (3) error "in finding that [Pappas] engaged in professional conduct involving dishonesty, fraud, deceit[,] or

5

misrepresentation which reflects adversely on the lawyer's fitness to practice law, in violation of Rule 8.4(c) of the Rules of Professional Responsibility; and (4) error because the "Board's Findings of Fact do not rise to the level of proof necessary to establish ethical misconduct."[3]

## II. Analysis

The standard of review we employ in reviewing a matter of attorney discipline is familiar and well-settled:

> We conduct an independent examination of the entire record. We consider the evidence and all reasonable inferences that may be drawn from the evidence in the light most favorable to the Bar, the prevailing party [below]. We accord the [Board's] factual findings substantial weight and view those findings as prima facie correct. Although we do not give the [Board's] conclusions the weight of a jury verdict, we will sustain those conclusions unless it appears that they are not justified by a reasonable view of the evidence or are contrary to law.

Anthony v. Virginia State Bar, 270 Va. 601, 608-09, 621 S.E.2d 121, 125 (2005). See also Pilli v. Virginia State Bar, 269 Va. 391, 396, 611 S.E.2d 389, 391 (2005).

In reviewing Pappas' first two assignments of error, we hold that the Board's decision to permit the amendment of

---

[3] Pappas also assigned error to the decision of the Board for "imposing discipline for conduct previously adjudicated and resolved in circuit court," but withdrew this assignment of error in his brief before this Court.

6

Paragraph 5 of the certification and its related decision to admit the deposition testimony of Poe were improper.

Pursuant to Code § 54.1-3909, this Court "may promulgate rules and regulations" which define the practice of law, prescribe "a code of ethics governing the professional conduct of attorneys," and prescribe "procedures for disciplining, suspending, and disbarring attorneys."  In accordance with this statutory authority, we promulgated Part Six of the Rules of the Supreme Court of Virginia.  Section IV, Paragraph 13 of Part Six outlines the procedures "for Disciplining, Suspending, and Disbarring Attorneys."

Prior to the hearing before the District Committee, the Bar must serve upon the attorney "by certified mail the Charge of Misconduct, a copy of the Investigative Report considered by the Subcommittee and any exculpatory materials in the possession of the Bar Counsel."  Part 6, § IV, ¶ 13(H)(1)(a)(1).  If, at the conclusion of its hearing, "the District Committee finds that the evidence shows the [attorney] engaged in Misconduct by clear and convincing evidence, then the Chair shall issue the District Committee's Determination."  Part 6, § IV, ¶ 13(H)(2)(m).  One of the options available to the District Committee is to certify its Determination to the Board for its consideration.  Part 6, § IV, ¶ 13(H)(2)(n).  A "certification" is "the document

issued by a Subcommittee or a District Committee when it has elected to certify the Charges of Misconduct to the Board for its consideration, which document shall include sufficient facts to reasonably notify Bar Counsel and Respondent of the basis for such Certification and the Disciplinary Rules alleged to have been violated." Part 6, § IV, ¶ 13(A). The attorney may appeal the District Committee's determination either to the Board or a three-judge circuit court panel. Part 6, § IV, ¶ 13 (H)(2)(p)(4). If, as Pappas did in this case, an attorney elects to appeal to the Board, the Board must then follow the procedures outlined in Part 6, § IV, ¶ 13(I).

Fundamental to any legal proceeding is notice and an opportunity to be heard. Tidwell v. Virginia State Bar, 262 Va. 548, 550, 554 S.E.2d 451, 453 (2001); see also Heacock v. Commonwealth, 228 Va. 235, 241, 321 S.E.2d 645, 649 (1984) (quoting Grannis v. Ordean, 234 U.S. 385, 394 (1914)). The procedures outlined in Part Six provide the notice and hearing provisions for disciplinary proceedings. These provisions ensure the integrity of the disciplinary process and protect the rights of the attorney.

There is no mechanism in Part Six that allows the Board to amend a certification from the District Committee. Paragraph 5 of the certification stated, "Mr. Poe ha[s] moved

8

to Tennessee and did not appear for the DUI hearing, but Mr. Pappas appeared and, <u>with Mr. Poe's consent</u>, entered a guilty plea on his client's behalf." (Emphasis added.) In his answer, Pappas admitted that Paragraph 5 was correct. Yet, with no notice and no review by the District Committee, the Board granted the Bar's request to amend Paragraph 5 of the certification so that it would read, "Mr. Poe had moved to Tennessee and did not appear for the DUI hearing, but Mr. Pappas appeared and, <u>allegedly with Mr. Poe's consent</u>, entered a guilty plea on his client's behalf." (Emphasis added.) This amendment was tantamount to a new charge. As such, Pappas was entitled to the procedural protections outlined in Part 6, § IV, ¶ 13, including notice, review by the District Committee, and the opportunity to be heard by the Board or a three judge panel. Furthermore, because the Board's decision to permit the amendment of Paragraph 5 of the certification was improper and the amended charge was not properly before the Board, its related decision to admit the deposition testimony of Poe also was improper.

In his two remaining assignments of error, Pappas argues the Board erred in finding that he violated Rule 8.4(c) of the Rules of Professional Conduct because the Board's "Findings of Fact" do not prove the ethical misconduct charged by clear and convincing evidence. We agree.

9

The charge properly before the Board was a violation of Rule 8.4(c). However, upon review of the Board's findings of fact, we conclude that none of the Board's findings address a violation of Rule 8.4(c). The Board's findings seem to address a conflict of interest, adverse representation, and a breach of the duty of loyalty:

> 30. A current or former client's consent to a conflict of interest in an adverse representation is required to be consent after consultation. Consultation is defined in the Rules of Professional Conduct as "communication of information reasonably sufficient to permit the client to appreciate the significance of the matter in question." Without consultation, a client's consent to a conflict of interest is not an informed consent and thus is no consent at all.
> 31. Loyalty is an essential element in the lawyer's relationship with a client.
> 32. Lawyers have superior knowledge and experience in addressing conflicts of interest with clients, current or former, and such clients justifiably may rely on their lawyer to be honest, candid, and thorough in eliciting consent to an adverse representation of another client.
> 33. A client's consent to a representation adverse to the client's interests, whether in litigation or otherwise, is required to be elicited before the adverse representation commences.

The only finding that could be considered to have addressed a violation of Rule 8.4(c) was:

> 29. There were conflicts between the testimony of [Pappas] and Ms. McCarl, on the one hand, and Mr. Poe, on the other hand, in material respects. The deposition testimony of Mr. Poe is credible. Ms. McCarl's deposition

10

> testimony was marked by uncertainty and speculation. [Pappas'] testimony ore tenus, if not evasive in material respects, was marked by inconsistency and vagueness.

However, this one finding is not sufficient to support the Board's determination that Pappas engaged "in conduct involving dishonesty, fraud, deceit or misrepresentation which reflects adversely on [Pappas'] fitness to practice law" by clear and convincing evidence. We hold that the evidence was insufficient to find by clear and convincing evidence that Pappas violated Rule 8.4(c).

## III. Conclusion

The Board's decisions to permit the amendment of Paragraph 5 of the certification and to admit the deposition testimony of Poe were improper. On the charge that was before the Board, the evidence was insufficient to find by clear and convincing evidence that Pappas violated Rule 8.4(c). We will reverse the order of the Board and dismiss the action against Pappas.

<u>Reversed and dismissed</u>.