PRESENT: Goodwyn, C.J., Powell, Kelsey, McCullough, and Chafin, JJ., and Lemons and Millette, S.JJ.

DARREN SCOTT HALEY

v. Record No. 220113

OPINION BY
JUSTICE TERESA M. CHAFIN
AUGUST 11, 2022

VIRGINIA STATE BAR

FROM THE VIRGINIA STATE BAR DISCIPLINARY BOARD

In this appeal of right, Darren Scott Haley challenges a decision of the Virginia State Bar Disciplinary Board (the "Board"). Upon review, we find no error in the Board's decision.

## I. BACKGROUND

### A. THE VIRGINIA STATE BAR'S INVESTIGATION

Haley practices law in Virginia and South Carolina, maintaining offices in both states. On December 19, 2019, Haley wrote a check from his trust account to an employee who worked in Haley's Virginia office. This check was returned for insufficient funds.

On December 26, 2019, Haley's bank advised the Virginia State Bar (the "VSB") of the returned trust account check. This notice triggered an investigation, which revealed that Haley had failed to properly manage his trust account. Haley regularly deposited unearned advance fees from his clients directly into his operating account instead of his trust account. Haley also used his trust account to pay for personal expenses, and he failed to keep sufficient records concerning his trust account. Significantly, Haley overdrew his trust account 53 times between January 2018 and April 2020.

During the course of the VSB's investigation, Haley made several statements about a client named "Michael Campbell." On May 28, 2019, Campbell paid Haley an advanced fee of $3,500. Haley deposited the payment into his operating account. Robert E. Baker, the VSB's

investigator, asked Haley whether Campbell was a Virginia client or a South Carolina client. Haley told Baker that he "thought" that Campbell was a South Carolina client, but Haley clarified that he had represented several individuals named "Michael Campbell." Although Haley agreed to review his records to confirm the identity of the "Michael Campbell" at issue, Haley never provided the VSB with any additional information regarding "Michael Campbell."

Upon further investigation, Baker discovered that the "Michael Campbell" who made the payment at issue was from Virginia. Baker also discovered that Haley represented a different "Michael Campbell" in South Carolina in 2014.

Moreover, Baker discovered that Haley was disciplined by the North Carolina State Bar (the "NCSB") on May 14, 2019. The NCSB issued a public reprimand to Haley after he failed to accurately report his prior disciplinary history when he filed a motion to appear pro hac vice in a North Carolina court. The NCSB noted that Haley made similar misrepresentations in another pro hac vice motion that he filed in a federal court in New York while the NCSB's investigation was pending. Haley did not report the North Carolina reprimand to the VSB.

B. THE SUBCOMMITTEE'S CERTIFICATION

On December 14, 2020, a VSB Subcommittee certified several allegations of misconduct against Haley for review by the Board. The Subcommittee's certification alleged that Haley violated Rules 1.5, 1.15, 8.1, 8.3, and 8.4 of the Virginia Rules of Professional Conduct. The certification also set forth factual allegations regarding the alleged rule violations.

In pertinent part, the certification addressed Haley's improper trust accounting practices. The certification also observed that Haley failed to report his North Carolina reprimand to the VSB. Furthermore, the certification addressed Haley's "lack of candor in responding to questions from the VSB's Investigator about the nature and status of his trust and other accounts,

2

and the activity therein." The certification did not expressly reference Haley's statements about "Michael Campbell." The certification, however, informed Haley and the Board that Haley's false and material statements were "not limited" to the statements that were expressly referenced in the certification.

## C. THE BOARD PROCEEDINGS

The Board held a virtual hearing to address the certified allegations of misconduct on November 19, 2021. At the beginning of the hearing, Haley stipulated that he violated Rules 1.5 and 1.15 when he failed to follow proper trust accounting practices. Haley also stipulated that he violated Rule 8.3 when he failed to report his North Carolina reprimand to the VSB. However, Haley contested the alleged violations of Rules 8.1 and 8.4.

During the Board hearing, Bar Counsel focused on Haley's statements about "Michael Campbell" to establish the alleged Rule 8.1 violation. In contrast, Bar Counsel focused on Haley's failure to report the North Carolina reprimand to establish the Rule 8.4 violation.

Bar Counsel argued that Haley's statements about "Michael Campbell" were false or misleading, observing that the "Michael Campbell" at issue was from Virginia rather than South Carolina. Bar Counsel also emphasized that Haley never took any steps to address the confusion arising from his statements about "Michael Campbell."

In his opening statement to the Board, Haley noted that the certification did not address the statements about "Michael Campbell." Nevertheless, Haley did not move for a continuance. Haley addressed the "Michael Campbell" statements again when he moved to strike the evidence. Haley argued that the Board should strike the alleged Rule 8.1 violation because the certification failed to address the "Michael Campbell" statements. Haley also argued that the

3

"Michael Campbell" statements were not material to the VSB's investigation. Additionally, Haley maintained that his statements about "Michael Campbell" were not false or misleading.

The Board denied Haley's motion to strike. After deliberating, the Board unanimously concluded that Haley's conduct violated Rules 1.5, 1.15, 8.1(a) and (b), 8.3, and 8.4(c).

After the Board determined that Haley committed professional misconduct, it proceeded to hear evidence and argument regarding the imposition of an appropriate sanction. When Bar Counsel attempted to engage in a lengthy examination of Baker, the Board inquired whether the parties would be willing to proffer any of the expected testimony concerning sanctions. Bar Counsel agreed to proffer the testimony of the VSB's witnesses. Haley, however, objected to proffering any testimony and stated that he preferred to present live testimony to the Board.

Bar Counsel proffered the remainder of Baker's anticipated testimony. Haley then attempted to conduct an in-depth cross examination of Baker. Eventually, the Board questioned the relevance of continued cross examination and suggested that Haley proffer some of the anticipated testimony.

Following Haley's proffer of Baker's anticipated testimony, Haley informed the Board that two of his character witnesses were currently unavailable to testify. Haley explained that these witnesses, who were both attorneys, were participating in other court proceedings. The Board advised Haley that he could proffer the testimony of his character witnesses if they were unavailable to testify.

Haley then testified in his own behalf. When Haley attempted to testify in detail regarding the management of his trust account, Bar Counsel stipulated that Haley had reformed his trust accounting practices. The Board determined that this stipulation eliminated the

4

necessity of further testimony regarding this issue, but it permitted Haley to continue testifying about other matters.

During his testimony, Haley presented two letters of support from attorneys practicing in the Roanoke area. Haley then presented live testimony from one of his character witnesses. As Haley's other character witness was still unavailable to testify, the Board allowed Haley to proffer that witness' testimony.

After the parties presented closing arguments, the Board unanimously decided to suspend Haley's license to practice law for 18 months. The Board declined to stay the suspension to allow Haley to "wind down" his practice and ordered that the sanction be "effective . . . immediately."

D. THE BOARD'S FINAL DECISION

On December 6, 2021, the Board entered a memorandum order that fully explained the bases of its decision. The Board explained that Haley violated Rule 8.1(a) when he made false or misleading statements about "Michael Campbell." The Board also found that Haley violated Rule 8.1(b) when he failed to correct any misapprehension arising from his statements about "Michael Campbell."

The Board determined that Haley knew that a Virginia client named "Michael Campbell" paid the fee at issue on May 28, 2019. The Board noted that Haley had not represented a client named "Michael Campbell" in South Carolina since 2014. The Board explained that Haley lied about the identity of "Michael Campbell" because "non-refundable legal fees" are permitted under South Carolina's Rules of Professional Conduct.

Additionally, the Board determined that Haley's statements about "Michael Campbell" were material to the VSB's investigation. The Board explained that if Haley's statements about

5

"Michael Campbell" were "accurate," the statements would have provided a defense to one of the alleged violations of Rule 1.5.

The Board found that Haley violated Rule 8.4(c) when he failed to report his North Carolina reprimand to the VSB. The Board observed that Haley's conduct constituted a "misrepresentation by omission." The Board concluded that this misrepresentation reflected adversely on Haley's "fitness to practice law."

The memorandum opinion also addressed the basis of the sanction that the Board imposed on Haley. The Board explained that the evidence established both aggravating and mitigating factors. The Board, however, placed emphasis on Haley's prior disciplinary record, which encompassed "multiple serious offenses, including violations of Rule 1.15, that involved multiple clients." Ultimately, the Board concluded that an 18-month suspension was justified.

## II. ANALYSIS

Haley contends that the Board erred when it denied his motion to strike. Haley maintains that the "Michael Campbell" statements could not serve as the basis of the alleged Rule 8.1 violation because the statements were not referenced in the Subcommittee's certification. Haley also argues that the evidence presented to the Board failed to establish that he violated Rules 8.1 and 8.4.

Furthermore, Haley claims that the Board "erred as a matter of law when it failed to proper[l]y permit [him] to present mitigation evidence, call mitigation witnesses, and submit documentary evidence of mitigation during the sanctions phase of the hearing." Haley contends that the Board improperly forced him to proffer certain testimony. Additionally, Haley argues that the Board should have taken a recess when one of Haley's character witnesses was unavailable to testify.

6

Finally, Haley challenges the sanction imposed by the Board. Haley claims that the Board erred when it imposed an 18-month suspension under the circumstances of this case. Haley also argues that the Board should have stayed his suspension.

A. THE "MICHAEL CAMPBELL" STATEMENTS

In the context of a disciplinary proceeding, a "certification" is the "document issued by a Subcommittee or a District Committee when it has elected to certify allegations of Misconduct to the Board for its consideration." Va. Sup. Ct. R., Part 6, § IV, ¶13-1. Pursuant to the Rules of this Court, a certification "shall include sufficient facts to reasonably notify Bar Counsel and [the] Respondent of the basis for such Certification and the Disciplinary Rules alleged to have been violated." *Id.*

In pertinent part, the Subcommittee's certification alleged that Haley violated Rule 8.1 of the Virginia Rules of Professional Conduct. The certification also addressed Haley's "lack of candor to the Bar." Specifically, the certification alleged that Haley made false or misleading statements to Baker during the course of the VSB's investigation. While the certification failed to reference Haley's statements about "Michael Campbell," the certification explained that Haley made additional false or misleading statements that were not expressly referenced in the certification.

Haley was also given at least some notice concerning the "Michael Campbell" statements. Bar Counsel explained that Haley received a copy of the report from Baker's investigation, and that Baker's report expressly addressed the "Michael Campbell" statements. Thus, Haley should have been aware that the VSB could potentially rely on the "Michael Campbell" statements during the disciplinary proceedings before the Board.

7

A proceeding to discipline an attorney is a "special proceeding, civil and disciplinary in nature, and of a summary character." *Motley v. Virginia State Bar*, 260 Va. 251, 259 (2000) (quoting *Virginia State Bar v. Gunter*, 212 Va. 278, 284 (1971)). On several occasions, we have explained that the "primary purpose" of a disciplinary proceeding "is to protect the public, not punish the attorney." *Baumann v. Virginia State Bar*, 299 Va. 80, 90 (2020) (quoting *Moseley v. Virginia State Bar*, 280 Va. 1, 3 (2010)). "To that end, 'it is only necessary that the attorney be informed of the nature of the charge preferred against him and be given an opportunity to answer.'" *Id.*; *see also Motley*, 260 Va. at 259.

We acknowledge that it may have been a better practice if the Subcommittee referenced the "Michael Campbell" statements in the certification. Under the circumstances of the present case, however, we conclude that Haley had sufficient notice of the allegations asserted against him, including the allegations arising from the "Michael Campbell" statements. Accordingly, Haley's statements about "Michael Campbell" could serve as the basis of the alleged Rule 8.1 violation.

B. THE RULE 8.1 VIOLATION

When an attorney appeals a decision of the Board, "[w]e conduct an independent examination of the entire record . . . [and] consider the evidence and all reasonable inferences that may be drawn from the evidence in the light most favorable to the Bar, the prevailing party below." *Baumann*, 299 Va. at 92 (quoting *Pappas v. Virginia State Bar*, 271 Va. 580, 585 (2006)). "We accord the Board's factual findings substantial weight and view those findings as prima facie correct." *Id.* (quoting *Pappas*, 271 Va. at 585-86). Although the Board's conclusions do not carry the weight of a jury verdict, "we will sustain those conclusions unless it

8

appears that they are not justified by a reasonable view of the evidence or are contrary to law." *Id.* (quoting *Pappas*, 271 Va. at 586).

In pertinent part, Rule 8.1 states, a "lawyer already admitted to the bar, . . . in connection with a disciplinary matter, shall not: (a) knowingly make a false statement of material fact; [or] (b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter[.]" Applying the appropriate standard of review, we conclude that the evidence presented in this case was sufficient to establish that Haley violated Rule 8.1(a) and (b).

The evidence supported the Board's conclusion that Haley made false statements about "Michael Campbell." Haley told Baker that the "Michael Campbell" who paid him $3,500 on May 28, 2019, was from South Carolina. Baker, however, discovered that the "Michael Campbell" who made the payment was actually from Virginia.

Although Haley represented individuals named "Michael Campbell" in both South Carolina and Virginia, Haley had not represented the South Carolina "Michael Campbell" since 2014. Moreover, Baker discovered that the case for the Virginia "Michael Campbell" was still pending on December 20, 2019. As Baker interviewed Haley in July of 2020, Haley made the statements at issue only seven months after he represented the Virginia "Michael Campbell." Under these circumstances, the Board could have reasonably inferred that Haley knew that the May 28, 2019, payment was made by the Virginia "Michael Campbell."

The Board could have also reasonably concluded that Haley falsely stated that "Michael Campbell" was from South Carolina in order to avoid a disciplinary charge. Haley deposited the payment from "Michael Campbell" directly into his operating account instead of his trust account. In South Carolina, this may have been permissible. *See* S.C. R. Pro. Conduct 1.5(f) (permitting a lawyer to charge an "advance fee" and treat that fee as "immediately earned" under

9

certain circumstances). In Virginia, however, the unearned fee at issue should have been deposited into Haley's trust account. *See* Va. R. Pro. Conduct 1.15(a)(1); Va. Legal Ethics Op. 1606 (approved by this Court on November 2, 2016).

On appeal, Haley argues that his statements about "Michael Campbell" were not material to the VSB's investigation. In general, a fact is "material" if it has "some logical connection with the consequential facts," or is "[o]f such a nature that knowledge of the item would affect a person's decision making." Black's Law Dictionary 1170 (11th ed. 2019). Although we have not addressed materiality in the specific context of an alleged violation of Rule 8.1, we have addressed the concept in the context of perjury. In order for testimony to be "material" in the context of perjury, it "must have been relevant in the trial of the case, either to the main issue or some collateral issue." *Holz v. Commonwealth*, 220 Va. 876, 881 (1980).

Haley's statements about "Michael Campbell" were material to the VSB's investigation. As noted by the Board, Haley's statements about "Michael Campbell" could have potentially provided a defense to certain violations of Rules 1.5 and 1.15.

Based on the evidence presented during the disciplinary proceedings, the Board could have reasonably determined that Haley made false statements about "Michael Campbell" that were material to the VSB's investigation. Therefore, the evidence presented to the Board was sufficient to establish that Haley violated Rule 8.1(a).

The evidence also supported the Board's determination that Haley violated Rule 8.1(b). During the course of the VSB's investigation, Haley told Baker that he "thought" that "Michael Campbell" was from South Carolina. Haley also told Baker that he would check his records to confirm the identity of "Michael Campbell." Nevertheless, Haley failed to provide any additional information to Baker or the VSB regarding "Michael Campbell." Critically, Haley

10

never clarified that "Michael Campbell" was actually from Virginia. Thus, Haley failed to correct the "misapprehension" arising from his initial incorrect statements about "Michael Campbell." *See* Rule 8.1(b).

C. THE RULE 8.4 VIOLATION

Pursuant to Rule 8.4(c), "[i]t is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation which reflects adversely on the lawyer's fitness to practice law[.]" The Board determined that Haley violated Rule 8.4(c) when he failed to report the North Carolina reprimand to the VSB. Under the particular circumstances of this case, the Board reasonably concluded that this conduct reflected adversely on Haley's fitness to practice law.

Although Haley knew that he was required to report a disciplinary violation from another jurisdiction to the VSB, Haley never advised the VSB of his North Carolina reprimand. The VSB only learned about the North Carolina reprimand when Baker discovered a check written to the NCSB that was drawn on Haley's trust account.

We find it significant that the NCSB disciplined Haley for dishonest conduct. The NCSB disciplined Haley because he failed to accurately list his prior disciplinary history in a pro hac vice motion that he filed in a North Carolina court. During its investigation, the NCSB also discovered that Haley made similar misrepresentations in a pro hac vice motion that he filed in a federal court in New York. Notably, Haley filed the New York pro hac vice application while his North Carolina disciplinary charges were pending. Consequently, Haley was already being investigated for making similar misrepresentations in North Carolina when he filed the New York pro hac vice application.

11

Haley's failure to report the North Carolina reprimand to the VSB was part of a broader pattern of dishonest conduct. Haley consistently failed to report his disciplinary history in multiple jurisdictions. The Board did not err when it determined that this conduct reflected adversely on Haley's fitness to practice law. Accordingly, we conclude that the evidence presented in this case supported the Board's determination that Haley violated Rule 8.4(c).

D. HALEY'S MITIGATION EVIDENCE

The "Board's decision to admit or exclude evidence is a discretionary matter and will not be overturned on appeal unless the record shows an abuse of that discretion." *Green v. Virginia State Bar*, 272 Va. 612, 616 (2006). Upon review, we conclude that the Board did not abuse its discretion when it placed reasonable limitations on the presentation of certain evidence during the sanctions phase of the disciplinary proceedings.

In the present case, Haley was permitted to present a substantial amount of mitigation evidence. Although the Board requested that the parties proffer the anticipated testimony of some witnesses, the Board permitted Haley to present live testimony and documentary evidence. Haley personally testified about matters that were pertinent to the sanctions phase of the proceedings. Haley also presented live testimony from a character witness, letters of support from other attorneys, and other documentary evidence regarding his reformed trust accounting practices. In short, Haley was "provided a full and fair opportunity to present evidence in mitigation" during the sanctions phase of the disciplinary proceedings. *See Green v. Virginia State Bar* (*Green II*), 274 Va. 775, 796 (2007).

The Board also did not abuse its discretion when it refused to take a recess until one of Haley's character witnesses was available to testify. The decision to grant a request for a recess is within the discretion of the Board. *See Motley*, 260 Va. at 261. Haley's character witness was

unavailable to testify during the sanctions phase of the disciplinary proceedings because the witness was participating in a court hearing in an unrelated case. Simply put, the witness did not appear to testify when he was required to do so. The Board did not abuse its discretion when it refused to take a recess to permit this witness to testify.

E. THE 18-MONTH SUSPENSION

The Board has broad discretion when imposing sanctions. *See Morrissey v. Virginia State Bar*, 260 Va. 472, 479 (2000). "On appeal, the penalty imposed by the Board will be viewed as prima facie correct and will not be disturbed unless we determine, upon independent review of the record, that the penalty was not justified by the evidence or was contrary to law." *Gay v. Virginia State Bar*, 239 Va. 401, 407 (1990).

Haley's 18-month suspension was an appropriate sanction. The evidence presented in this case established that Haley engaged in a long pattern of dishonest conduct in multiple jurisdictions. Additionally, the evidence established that Haley had previously been disciplined for similar forms of misconduct. The South Carolina State Bar suspended Haley's license in 2005, for nine separate counts of misconduct that included financial improprieties. The VSB also issued a private reprimand to Haley in 2009, after it received notice that Haley's trust account contained insufficient funds to honor five checks. Haley's 18-month suspension was also based, in part, on his conceded violations of Rules 1.5 and 1.15. The evidence presented in this case established that Haley's trust accounting practices were extremely deficient. Significantly, Haley overdrew his trust account 53 times between January 2018 and April 2020.

On appeal, Haley argues that the Board should have stayed his suspension. The Board has the authority "to set the effective date of [a] sanction." *Green II*, 274 Va. at 794. "In determining the effective date of a sanction, . . . the Board's decision is subject to review for an

abuse of discretion." *Id.* We conclude that the Board did not abuse its discretion when it refused to stay Haley's suspension under the circumstances of this case.

## III. CONCLUSION

For the reasons stated, we will affirm the judgment of the Board.

*Affirmed.*